# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | |
|---|---|
| JO ANN ALVAREZ, | CIVIL COMPLAINT |
| Plaintiff, | |
| v. | CASE NO. 7:24-cv-00080 |
| QUANTUM DEBT SOLUTIONS, LLC, | DEMAND FOR JURY TRIAL |
| Defendant. | |

## COMPLAINT

**NOW COMES**, Jo Ann Alvarez ("Plaintiff"), by and through her undersigned counsel, complaining as to the conduct of Quantum Debt Solutions, LLC ("Defendant"), as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for Defendant's violations pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq*., the Texas Credit Services Organizations Act ("TCSOA") under Tex. Fin. Code § 393.101 *et seq*., and the Texas Consumer Debt Management Services Act ("TCDMSA") under Tex. Fin. Code § 394.201 *et seq*., for Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the CROA and 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. The Court has supplemental jurisdiction over the state law TCSOA and TCDMSA claim under 28 U.S.C. §1367.

1

4.   Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business in the Southern District of Texas, Plaintiff resides in the Southern District of Texas, and a substantial portion of the events or omissions giving rise to the claims occurred within the Southern District of Texas.

**PARTIES**

5.   Plaintiff is a consumer over 18-years-of-age who, resides in Edinburg, Texas.

6.   Defendant is a debt consolidation company that claims to be "experienced negotiators who know how to deal with creditors" that provide to its customers debt settlement at "40% off the balance or more."[1] Defendant is a limited liability company organized under the laws of the state of Texas that maintains its principal place of business at 801 East Fern Avenue, Suite 120, Mcallen, Texas 78501.

7.   Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

**FACTS SUPPORTING CAUSES OF ACTION**

8.   Prior to the events giving rise to this action, Plaintiff opened many consumer credit accounts with a variety of retailers resulting in high interest payments due monthly.

9.   In May 2021, Plaintiff desired to address various debts that she had accumulated, and so began searching for credit repair and debt consolidation programs to assist in her efforts and happened upon Defendant.

10. Plaintiff explained to Defendant the nature of the debts she wanted to enroll, and Defendant advised that it could enroll those debts in its program and would be able to settle each of those

---

[1] https://www.quantumdebtsolutions.com/how-it-works (last visited: February 23, 2024)

debts by negotiating settlements with her creditors and that Plaintiff's creditworthiness would increase as a result.

11. On May 11, 2021, Plaintiff, finding desirable Defendant's promises to assist in Plaintiff's efforts to reestablish her financial foothold, agreed to utilize Defendant's services and entered into a contract with Defendant for the provision of the same.

12. Specifically, Plaintiff agreed to enroll 15 of her credit accounts ("subject debt") in Defendant's 48-month program at an estimated total cost of $18,599.52, which includes an initial fee of $259.75, owed to Defendant to be paid monthly at the rate of $387.49 per month.

13. A summary of Plaintiff's subject debt had an estimated total of $24,723, including her credit accounts with Citi Bank and Discover.

14. Moreover, Plaintiff signed a power of attorney with Defendant, which promised that Defendant would provide her with legal protection if she were to be sued by any of her creditors.

15. As a result of enrolling into Defendant's program, Plaintiff was instructed to cease payments to creditors on all enrolled debts in her detrimental reliance on Defendant's promise that it would resolve her subject debt.

16. After 11 months of utilizing Defendant's program, Plaintiff continued to faithfully make her payments to Defendant.

17. During that time frame, Defendant largely failed to perform the represented services for Plaintiff, let alone achieve the benefits or results that it represented it would achieve for Plaintiff.

18. Specifically, despite Plaintiff making thousands of dollars in payments to Defendant, Defendant did not resolve any accounts for Plaintiff. Defendant promised Plaintiff that it would resolve all of her subject debt at a fraction of the cost and increase her overall creditworthiness, however, none of Plaintiff's accounts were resolved and her credit scores decreased drastically.

3

19. Moreover, Plaintiff was sued twice by Citi Bank and Discover for debt that Defendant promised to and failed to resolve. As a result, Plaintiff was served at her work causing her severe embarrassment and humiliation.

20. Despite Defendant's promise to provide attorney protection to Plaintiff, Defendant failed to offer legal counsel of any capacity for Plaintiff when she was being sued by her Citi Bank and Discover creditors.

21. Furthermore, Plaintiff continues to be harassed by her creditors through collection letters and collection calls as a result of Defendant's failed promise to resolve the subject debt with Plaintiff's original creditors.

22. In total, the estimated cost paid by Plaintiff for Defendant's failed services is $9,559.51.

23. Rather than apply Plaintiff's payments to resolving financial obligations, Defendant instead caused Plaintiff to be charged for promised services before performing, or fully performing, the services justifying Defendant's retention of such fees.

24. Plaintiff was informed that the subject accounts were being taken care of and were actively being negotiated.

25. Despite Plaintiff making her monthly payments to Defendant, believing that her debts were actively being settled, Plaintiff's debts were never satisfied by Defendant and Plaintiff's credit score only decreased since starting Defendant's program.

26. Additionally, Defendant failed to refund Plaintiff the full amount paid for its services that were never performed.

27. Defendant's refusal to assist Plaintiff represents the deceptive nature of Defendant's representations that it will work with its customers to resolve debts with problematic creditors.

28. Upon further information and belief, Defendant knowingly informs consumers that they can resolve their debts, despite similarly knowing it would be unable to achieve those represented results, in particular considering the nature of the debts which were enrolled in its program.

29. In April 2022, upon realizing the nature of Defendant's scheme and the full extent of their misrepresentations, Plaintiff advised she would be cancelling her contract, and further began exploring her legal options to address Defendant's conduct.

30. Frustrated, distressed, and concerned over Defendant's conduct, Plaintiff spoke with the undersigned counsel regarding her rights.

31. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, and embarrassment stemming from her being served by her creditors at her work, pecuniary loss stemming from the payments made to Defendant for deficient credit repair services, incurrence of inappropriate court fees, as well as numerous violations of her state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations.

## COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

32. Plaintiff repeats and realleges paragraphs 1 through 31 as though fully set forth herein.

33. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

34. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

5

### a. Violations of CROA § 1679b(a)

35. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

36. Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it could provide Plaintiff. Defendant advised that it would actively reach a negotiated settlement if Plaintiff had sufficient funds. Plaintiff had such sufficient funds, yet Defendant failed to achieve the negotiated settlement on her outstanding debts, underscoring the deceptive and misleading nature of Defendant's conduct.

37. Defendant further acted deceptively when it suggested to Plaintiff that her funds being paid to Defendant monthly would be used to negotiate settlements to her creditors. Such funds were clearly not being used, and Defendant simply failed to do its job.

### b. Violations of CROA § 1679b(b)

38. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

39. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed. Defendant's practice of charging a

retainer for services upfront, before such services is performed, is inherently in violation of the CROA. Defendant similarly withheld sums for credit repair services it never actually performed.

40. As alleged above, Plaintiff was harmed by Defendant's actions.

**WHEREFORE**, Plaintiff, JO ANN ALVAREZ, respectfully requests that this Court enter judgment in her favor as follows:

   a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

   b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

   c. Awarding Plaintiff punitive damages, in an amount to be determined at hearing, as provided under 15 U.S.C. § 1679g(a)(2)(A);

   d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

   e. Awarding any other relief as the Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE TEXAS CREDIT SERVICES ORGANIZATION ACT

41. Plaintiff restates and realleges paragraphs 1 through 40 as though fully set forth herein.

42. Plaintiff is a "consumer" as defined by Tex. Fin. Code § 393.001(1).

43. Defendant is a "credit services organization" as defined by Tex. Fin. Code § 393.001(3).

   **a.  Violations of Tex. Fin. Code §§ 393.304(1) & 393.305**

44. The TCSOA, pursuant to Tex. Fin. Code § 393.304(1), prohibits a credit services organization from "mak[ing] or us[ing] a false or misleading representation in the offer or sale of the services of the organization." Similarly, pursuant to Tex. Fin. Code § 393.305, "[a] credit services organization or a representative of the organization may not directly or indirectly engage in a fraudulent or deceptive act, practice, or course of business relating to the offer or sale of the services of the organization."

45. Defendant violated §§ 393.304(1) & 393.305 in much the same way it violated §§ 1679b(a)(3)-(4) of the CROA.

**WHEREFORE**, Plaintiff, JO ANN ALVAREZ, respectfully requests that the Court enter judgment in her favor as follows:

    a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

    b. Awarding Plaintiff actual damages pursuant to Tex. Fin. Code § 393.503(b);

    c. Awarding Plaintiff punitive damages pursuant to Tex. Fin. Code § 393.502;

    d. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Tex. Fin. Code §§ 393.503(a)(2)-(3); and

    e. Awarding any other relief as the Court deems just and appropriate.

### COUNT III – VIOLATIONS OF THE TEXAS CONSUMER DEBT MANAGEMENT SERVICES ACT

46. Plaintiff restates and realleges paragraphs 1 through 45 as though fully set forth herein.

47. Plaintiff is a "consumer" as defined by Tex. Fin. Code § 394.202(4).

48. Defendant is a "provider" of "debt management service" as defined by Tex. Fin. Code §§ 394.202(6) & (10).

**a. Violations of Tex. Fin. Code § 394.207**

49. The TCDMSA, pursuant to Tex. Fin. Code § 394.207, provides that "[a] provider may not engage in false or deceptive advertising."

50. Defendant violated § 394.207 through its deceptive advertising directed towards Plaintiff regarding the nature of the services it would perform for Plaintiff. Defendant recommended that it would be able to achieve its results within a certain period of time despite knowing, or being substantially sure, that it would not be able to achieve the results within the timeframe represented. Upon information and belief, it is Defendant's business model to misrepresent its

8

services to consumers to get their feet in the door and induce consumers to complete Defendant's program knowing that it will ultimately fail to honor its representations of resolving client debt.

### b. Violations of Tex. Fin. Code § 394.212

51. The TCDMSA, pursuant to Tex. Fin. Code § 394.212, outlines a number of prohibited practices on the part of providers.

52. Pursuant to § 394.212(a)(9), a provider may not "engage in an unfair, deceptive, or unconscionable act or practice in connection with a service provided to a consumer."

53. Defendant violated § 394.212(a)(9) through the deceptive and unfair nature of the representations made to Plaintiff and manner in which its services were subsequently provided.

54. As alleged above, Plaintiff was harmed by Defendant's actions.

**WHEREFORE**, Plaintiff, JO ANN ALVAREZ, respectfully requests that the Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Tex. Fin. Code § 394.215(c);

c. Awarding Plaintiff punitive damages pursuant to Tex. Fin. Code § 394.215(c);

d. Enjoin Defendant from further violations of law pursuant to Tex. Fin. Code § 394.215(d);,

e. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Tex. Fin. Code § 394.215(c); and;

f. Awarding any other relief the Court deems just and appropriate.

**Plaintiff demands trial by jury.**

Dated: March 4, 2024

Respectfully Submitted,

/s/ Marwan R. Daher
Marwan R. Daher, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd
2500 S Highland Ave, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181
mdaher@sulaimanlaw.com